# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WMS Gaming, Inc., | ) |
| Plaintiff, | ) |
| | ) No. 13 C 4788 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| IGT, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant IGT's motion to stay these proceedings pending arbitration. IGT asserts that a key issue underlying the suit is subject to a mandatory arbitration clause in the operative contract, and therefore the suit should not move forward until an arbitration panel resolves the arbitrable issue. Plaintiff WMS Gaming counters that a stay is unnecessary because none of its claims hinges on an arbitrable issue. WMS further contends that the complaint seeks merely to ensure that IGT performs on the parties' license agreement and therefore that WMS is entitled to the requested relief under the contract's requirement that the parties continue to perform during arbitration. The Court finds that in ruling on the suit, the Court is likely to have to decide the arbitrable issue. In order to respect the parties' agreement to arbitrate and to avoid a ruling inconsistent from that imposed by the arbitration panel, the Court grants IGT's motion to stay these proceedings pending arbitration [10].[1]

## BACKGROUND

WMS and IGT are leading manufacturers of slot machines. Modern slot machines do not use coins, but instead utilize "ticket-in, ticket-out" ("TITO") technology. TITO technology

---

[1] IGT has also filed a motion to dismiss for improper venue [48]. Because the Court finds a stay appropriate, it will refrain from ruling on the motion to dismiss at this time.

allows a gamer to insert a ticket containing a barcode into a slot machine at the start of play and to remove the ticket at the end of play. The ticket records the gamer's winnings or losses. TITO technology makes slot machines more attractive to consumers and to the casinos that purchase the machines from WMS or IGT. The intellectual property behind TITO technology is covered by a pool of patents to which IGT—but not WMS—is authorized to grant licenses. The license comes in the form of a TITO tag, which the licensee or sub-licensee attaches to the side of the slot machine before delivering the machine to a third party.

In 2006, WMS and IGT entered a license agreement under which IGT agreed to sell TITO tags to WMS. Each tag costs $1,200 if used domestically or $360 if used internationally. After receiving the tag, the license agreement requires WMS to "promptly affix" the tags to "Royalty Bearing Products." Compl. Ex. B at § 3.4. IGT states that because TITO tags are difficult to trace, it treats the tags like cash by storing them in a vault and closely monitoring when and how many tags are shipped to sublicensees like WMS.

The license agreement contains an arbitration clause, which provides:

> If the Disputed Product Issue cannot be resolved in the discussions provided for in Section 11.1, then is shall be resolved through arbitration. Arbitration shall be conducted under the then current rules and procedures of the American Arbitration Association (AAA), except to the extent the provisions of this Agreement provide otherwise.

*Id.* at § 11.2. A "Disputed Product Issue" arises when WMS "fails to pay a Licensee Fee for a Gaming Machine where a Licensee Fee is otherwise required . . . on the grounds that a Gaming Machine is not a Royalty Bearing Product." *Id.* at § 2.2.

For the last few years, the parties have been unable to account for some TITO tags. IGT asserts that WMS has failed to account for approximately 20,000 tags. Seeking to identify the missing tags, IGT exercised its audit right under the license agreement in the fall of 2011, hiring KPMG as auditors. Even after the audit, however, the parties continue to dispute how many tags

are missing. Additionally, the auditors have been unable to determine what happened to the missing tags.

IGT has offered two possible explanations as to what happened to the missing tags. The first is that WMS is stockpiling tags in violation of the license agreement. WMS strongly denies this. The second possible explanation is that WMS affixed tags to gaming machines on which it has not paid royalties to IGT. IGT asserts that WMS is required to pay royalties on all machines to which it affixes TITO tags. WMS disputes this, arguing that it must pay royalties on a tag only under certain circumstances. WMS acknowledges that this question of whether it has paid the required royalties is a "Disputed Product Issue" as defined by the license agreement and is therefore subject to the agreement's mandatory arbitration clause.

In May of 2012, frustrated that WMS could not account for missing tags, IGT demanded that WMS pre-pay when purchasing tags in the future. Under the original license agreement, WMS paid for tags within 45 days of the end of the calendar quarter in which WMS placed the tag with a third party. WMS and IGT effectuated the new payment terms by entering a number of amendments to the license agreement, each setting out one-time purchases in which WMS paid for a certain number of tags prior to taking delivery. WMS contends that it entered these amendments under duress because it would have gone out of business if it did not accede to IGT's pre-payment demand.

Unhappy with the new payment terms and concerned that IGT could stop providing tags at any moment, WMS filed its complaint in July of 2013. The complaint primarily seeks an injunction requiring IGT to perform according to the terms of the original license agreement. The complaint seeks this relief in four counts under four different theories—breach of contract, anticipatory repudiation, breach of the implied covenant of good faith and fair dealing, and a

violation of the Nevada Unfair Trade Practices Act. WMS also seeks a declaratory judgment that it is entitled to the relief requested. In addition to the equitable relief, WMS seeks treble damages and attorneys' fees and costs under the Nevada Unfair Trade Practices Act. Subsequent to filing the complaint, WMS sought a temporary restraining order. The Court denied this request, finding that WMS had not demonstrated an emergency, likely success on the merits, or that a legal remedy was inadequate.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") was enacted in 1925 to "revers[e] centuries of judicial hostility to arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974). The goal of the FAA is to "avoid the costliness and delays of litigation and to place arbitration agreements upon the same footing as other contracts." *Id.* (internal quotation marks omitted). A court *must* stay proceedings if it is satisfied that an issue before it is arbitrable. 9 U.S.C. § 3; *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007). "[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *Volkswagen*, 474 F.3d at 971 (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996)).

## ANALYSIS

IGT argues that the Court should stay the suit because the license agreement's arbitration clause requires arbitration of the "Disputed Product Issue." IGT acknowledges that the arbitration clause does not apply directly to the conduct complained of in the complaint. Doc. 46 at 19:24–20:1, 25:9–12. But it is also clear that the arbitration clause applies to the question of

4

whether WMS has paid sufficient royalties on the TITO tags it received from IGT. This issue is central to IGT's defense. Therefore, the Court finds that this case involves arbitrable and non-arbitrable issues. When faced with a motion to stay in a case involving arbitrable and non-arbitrable issues, a court must determine whether to stay the suit pending arbitration of the arbitrable issue or to allow the suit and the arbitration to move forward simultaneously.[2] *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996). The question now before the Court hinges on how closely the arbitrable and non-arbitrable issues are tied. In deciding this, the Court considers several factors—the risk of inconsistent rulings, the strain on judicial resources, the prejudice caused by delay, and the extent to which the parties will be bound by the arbitration. Here, the most-relevant factor is the likelihood that the Court might be confronted with the arbitrable issue, thereby intruding on the authority of the arbitration panel and risking ruling inconsistent with the panel's decision. *Volkswagen*, 474 F.3d at 972.

WMS contends that the arbitrable and non-arbitrable issues are independent of each other because WMS could prevail on its claims without the Court deciding the arbitrable "Disputed Product Issue." Therefore, WMS asserts that "there is no risk of inconsistent judgments as to these issues." Doc. 39 at 7. The Court disagrees. Although the arbitrable issue is not central to WMS' causes of action, the Court finds that it would likely have to decide the arbitrable issue in the course of the litigation because it is central to IGT's defense. In order to avoid interfering with the jurisdiction of the arbitrator and risking inconsistent rulings, the Court grants IGT's motion to stay pending arbitration. *Volkswagen*, 474 F.3d at 972.

---

[2] Another option is to stay only those causes of action that involve arbitrable issues, while allowing causes of action that do not contain arbitrable issues to move forward. *Volkswagen*, 474 F.3d at 971. Neither party suggests doing so, and the Court finds that such a result is inappropriate here because the arbitrable issue is relevant to all of the complaint's five counts.

In *Volkswagen*, because the arbitrable and non-arbitrable issues were completely independent of each other and based in separate contracts, the district court stayed only the arbitrable issue and allowed the non-arbitrable issue to move forward. *Id.* at 974. When the defendant appealed, the Seventh Circuit affirmed, holding that the district court did not abuse its discretion. *Id*. In doing so, the Seventh Circuit made clear that courts "rigorously enforce agreements to arbitrate." *Id.* at 971 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)). This is true even when enforcing the agreement to arbitrate results in piecemeal litigation—litigating one issue in court while another issue is resolved by arbitration. *Volkswagen*, 474 F.3d at 971; *Dean Witter*, 470 U.S. at 221. But the Seventh Circuit cautioned against piecemeal litigation when it would risk creating two inconsistent rulings on the same issue. *Volkswagen*, 474 F.3d at 971. Put another way, staying the entire litigation is appropriate where the suit would decide an arbitrable issue and thereby impair the issues before the arbitrator. *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 407 (7th Cir. 1990), *abrogated on other grounds by IDS Life Insurance Co.*, 103 F.3d 524. The Seventh Circuit also noted that "[i]n many instances, moreover, district courts actually may prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court." *Volkswagen*, 474 F.3d at 971.

The Court finds that allowing the litigation to move forward would create too great a risk that this Court and the arbitration panel could reach inconsistent decisions. While WMS may be correct that it could win its case without the Court considering the effect of the "Disputed Product Issue," IGT would certainly raise the "Disputed Product Issue" in defending against the allegations in the complaint. Based on the facts presently before the Court, if the arbitration

6

panel agrees with IGT, it would find that WMS breached the agreement by failing to properly pay royalties on tags. Such a breach would excuse IGT's subsequent breaches alleged in the complaint. Likewise, in litigating the case the Court would almost certainly have to decide IGT's arbitrable defense. In order to honor the arbitration clause in the license agreement and to avoid two inconsistent rulings, the Court will refrain from deciding the arbitrable issue. *Valentine v. Wideopen W. Fin., LLC*, No. 09 C 07653, 2012 WL 1021809, at *6 (N.D. Ill. Mar. 26, 2012) (staying a suit where the defendant raised an arbitrable issue in response to the plaintiff's allegations).

WMS contends that the arbitrable issue is independent of the complaint "because the 'complaint contain[s] no arbitrable claim[s].'" Doc. 39 at 4 (quoting *French v. Wachovia Bank*, 574 F.3d 830, 836 (7th Cir. 2009) (alterations in original)). The quoted statement from *French* is largely irrelevant because the relationship between the arbitrable and non-arbitrable issues in *French* was very different than the relationship between the arbitrable and non-arbitrable issues here. But the Seventh Circuit cautioned courts to avoid the risk of inconsistent rulings on arbitrable *issues*, not simply arbitrable claims. *Volkswagen*, 474 F.3d at 971; s*ee also Valentine*, 2012 WL 1021809, at *6. Here, IGT has raised an issue that is clearly arbitrable. Moreover, the arbitration clause requires that all arbitrable issues go before an arbitration panel. Compl. Ex. B at § 11.2. WMS cannot say that the arbitrable issue is completely unrelated to the complaint, as the complaint refers to the facts underlying the "Disputed Product Issue" in multiple paragraphs, Doc. 1 ¶¶ 31–39, and goes on to incorporate these paragraphs into each count. Therefore, the Court rejects WMS' argument that a stay is improper because the complaint does not allege any arbitrable causes of action.

In addition to considering the risk of inconsistent rulings, the Seventh Circuit advises courts to weigh the strain on judicial resources, the prejudice that may result from delay, and the extent to which the parties will be bound by the arbitrators' decision. *Volkswagen*, 474 F.3d at 971, 973. The Court finds these factors unpersuasive here and that none of these factors strongly supports either party. The concern regarding judicial resources weighs in favor of staying the case pending arbitration rather than litigating the arbitrable issue. The Court finds that WMS will not be unduly prejudiced by any delay resulting from a stay. As the Court found when it denied WMS' request for a temporary restraining order, WMS has been able to purchase TITO tags from IGT, albeit on terms that it does not like. IGT has represented to the Court that it will continue to provide WMS with tags as needed. As long as this remains true, WMS cannot identify undue prejudice resulting from delay. As for the last factor, WMS contends that arbitration would be a waste of time because IGT would not be bound by an adverse arbitration decision. If true, this weighs in WMS' favor. But the Court is not swayed by this factor because the parties—both sophisticated businesses—agreed to the terms of the arbitration clause. *Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 946 (7th Cir. 2003) (noting that "sophisticated parties . . . know how to say what they mean and have an incentive to draft their agreement carefully"). The Court will rigorously enforce the clause in order to honor the parties' intent when in drafting the license agreement, even if WMS now challenges the clause's effectiveness.

WMS also argues that a stay is improper because WMS seeks only to ensure that IGT continues to perform on the original contract. WMS contends that this case is different from others because the license agreement contains a continued performance clause—setting out that the parties must continue to perform on the agreement while arbitration is pending. WMS further asserts that in bringing this suit, it seeks merely to enforce this provision. In support of

its position, WMS cites *Peabody Coalsales Co. v. Tampa Electric Co.*, 36 F.3d 46, 47 (8th Cir. 1994), which it calls "remarkably similar" to the current case. Doc. 54 at 5.

In *Peabody*, the Eighth Circuit held that a district court should not stay a matter where the plaintiff seeks only continued performance on a contract pursuant to the clear terms of the agreement, and where ruling on the injunction would not require the court to become entangled in the merits of the underlying dispute. *Peabody*, 36 F.3d at 48. This principle is inapposite for at least three reasons. First, WMS ignores that Count V of the complaint seeks damages in addition to injunctive relief. Therefore, the complaint does not seek only to ensure that IGT performs on the license agreement. Second, the terms of the underlying agreement are far from unmistakable. Even if the Court wished to enforce the license agreement, it is unclear at this stage whether the Court should enforce the original agreement or the agreement as amended when the parties set out terms of pre-payment. Contending that it entered the amendments under duress, WMS asks the Court to enforce the terms of the original license agreement—which includes payment conditions more favorable to WMS. Thus, this is a far cry from the clear contract terms in *Peabody*. Third, unlike in *Peabody*, the Court cannot grant WMS' requested relief without becoming entangled in the underlying arbitrable dispute. As discussed above, the arbitrable issue is central to IGT's defense and could decide the case.

The Court also rejects WMS' argument that it would be entitled to injunctive relief even without the continuing performance clause. In support of this argument, WMS cites *IDS Life Insurance Co.*, 103 F.3d at 527, for the proposition that a stay should not deprive a litigant of the right to seek protection against irreparable injury. On this point, WMS raises many of the same arguments that the Court rejected in ruling on the temporary restraining order. But the only injury WMS has alleged is that it has been forced to pay before receiving TITO tags. As in the

context of the request for a temporary restraining order, the Court finds that WMS is not subject to any irreparable injury. Therefore, the Court rejects WMS' arguments and finds a stay to be appropriate.

## CONCLUSION

The Court grants IGT's motion to stay these proceedings pending arbitration [10]. The Court finds that the arbitrable issue is too closely tied to the non-arbitrable issues in the complaint such that the Court could not rule on the complaint without deciding an arbitrable issue. In order to avoid the risk of inconsistent rulings and to respect the authority of the arbitration panel, the Court exercises its discretion to stay the suit pending arbitration.

Dated: March 25, 2014

SARA L. ELLIS
United States District Judge